GLICKSTEIN, Judge.
This is an appeal from a judgment and conviction. We conclude the trial court’s denial of appellant’s motion to suppress physical evidence and statements was erroneous and reverse.
At the motion to suppress physical evidence hearing, the state introduced the testimony of Officer Craig Hartman from the Delray Beach police department. Officer Hartman testified that prior to March 10, 1987, he received information from a confidential informant concerning appellant and the sale of narcotics from a certain address in Delray Beach. Officer Hartman stated that he had worked with this confidential informant “approximately fifteen to twenty” times prior to the instant case and that the information previously supplied by this informant “resulted in seizure of narcotics, arrests, search warrants.”
Officer Hartman testified that the confidential informant advised him that a black male known as “Pee Wee” (appellant) sold narcotics from a residence in Delray Beach. A search warrant was obtained on February 20, 1987 to search this residence. The search warrant was not executed, however, because the informant advised the police that he had made contact with appellant and had bought the last piece of cocaine crack that was on the premises. Appellant *1045 told the informant that he had no other narcotics in the house because he was in the process of moving.
Thereafter, the confidential informant advised Officer Hartman that appellant and appellant’s girlfriend, Sandra Walker, were actively selling narcotics out of their vehicle, a yellow four-door Pontiac. As to when or where the narcotics would be sold from the vehicle, Officer Hartman testified that the informant never mentioned any specific information.
The confidential informant pointed out the subject vehicle to Officer Hartman. Officer Hartman took down the vehicle’s tag number and ran a computer check on it to establish the identity of the registered owner. The tag search revealed that the tag was assigned to a 1970 four-door Cadillac and not to the Pontiac being used by appellant for drug sales.
On March 10, 1987, Officer Hartman observed appellant along with Sandra Walker in the vehicle in question. Officer Hartman pulled the vehicle over for an improper license tag in violation of section 320.261, Florida Statutes (1987). This statute makes it a misdemeanor knowingly to attach to a vehicle a registration plate or revalidation sticker not issued and assigned or lawfully transferred to that vehicle. After the vehicle was stopped, Officer Hartman searched appellant’s person and found a brown paper bag in his front jacket pocket containing thirteen tinfoil packets of cocaine powder and four clear plastic bags of marijuana.
Since violation of statutory section 320.261 is only a misdemeanor, a police officer may arrest without a warrant only if the person has committed the offense in the presence of the officer. § 901.15(1), Fla.Stat. (1985). See, Phillips v. State, 314 So.2d 619 (Fla. 4th DCA 1975). There is nothing in the record to indicate that the police officer personally observed appellant attaching a registration license plate or a validation sticker which was not lawfully transferred to the subject vehicle. In the absence of such personal observation by the police officer herein, probable cause to make the warrantless arrest did not exist. Cf Springfield v. State, 481 So.2d 975, 977 (Fla. 4th DCA 1986).
The instant case is similar in certain respects to Nickolo v. State, 379 So.2d 169 (Fla. 4th DCA), cert. denied, 388 So.2d 1118 (Fla.1980), wherein this court reversed a trial court’s denial of a motion to suppress physical evidence and a statement made subsequent to the arrest.
As in Nicholo the facts of the instant case support a finding that the illegal drugs were seized as a result of a warrant-less search preceding an unlawful arrest. Had the appellant not been improperly searched, the drugs on his person would not have been discovered. The police officer testified at the motion to suppress hearing that appellant was not violating any law when the stop of the vehicle was effectuated, that he felt no weapons on appellant during the pat down following the stop of the vehicle, and that the reason for stopping the vehicle was for an improper tag.
Having discussed that there was no valid arrest for the improper tag violation, one must then determine whether adequate justification existed for a search without either a warrant or a legal arrest. Collins v. State, 65 So.2d 61 (Fla.1953). In Collins the Florida Supreme Court dealt with the issue of how a search without a warrant of a vehicle may be properly made and the evidence obtained thereby be made competent. After reviewing and summarizing various cases from the United States Supreme Court as well as some of its own earlier opinions, the Florida Supreme Court stated:
[W]e reach the conclusion that it is safer procedure to secure a search warrant preliminary to stopping a motorist and searching his car; that if halting, searching and seizing are accomplished without such a warrant the officer must be prepared to show that he had “probable cause” for his acts or “reasonable belief” or “trustworthy information” that the car was engaged in the transportation of contraband.
*1046 65 So.2d at 64-65. The court further stated:
[W]e adopt the rule that where it is impossible or impracticable to secure a search warrant the officer making the search and seizure must be prepared to convince the court that the information he possessed was sufficient basis for the issuance of a warrant had he applied for one.
Id. at 65 (emphasis added). The record herein does not support a finding that it was impossible or impracticable to secure a search warrant. The officer testified that the confidential informant had advised him that appellant and his girlfriend were actively selling narcotics out of their automobile; that he was in contact with the informant almost daily; that the officer knew that as of February 24, 1987 appellant was no longer selling narcotics from his home; and that the officer did not stop appellant’s vehicle and search him until March 10, 1987.